```
            IN THE UNITED STATES BANKRUPTCY COURT
              FOR THE NORTHERN DISTRICT OF IOWA


IN RE:                         )
                               )    Chapter 12
MARY L. VANTIGER-WITTE,        )
                               )    Bankruptcy No. 05-02931
       Debtor.                 )
```

**ORDER RE RENEWED MOTION TO DISMISS FILED BY
FARM SERVICE ADMINISTRATION (FSA)**

Hearing was held on December 12, 2006 on a Renewed Motion to Dismiss filed by Farm Services Administration (FSA). Debtor appeared in person with Attorney Thomas McCuskey. FSA was represented by Assistant U.S. Attorney Martin McLaughlin. Carol Dunbar appeared as Chapter 12 Trustee. Evidence was presented and the matter was submitted after argument by counsel. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

The record in this case reflects that Debtor filed a Chapter 12 petition on June 12, 2005. FSA filed an initial Motion to Dismiss on September 12, 2005 alleging that Debtor was not eligible as a debtor under Chapter 12 of the Code. After hearing on this Motion, it was ordered by the Court that the Motion to Dismiss be continued and considered at the same time as the confirmation of the plan. The reason for not resolving the matter at that time related to the existence of a lien priority issue between FSA and another creditor.

The priority of lien issue is now on appeal and FSA filed a Renewed Motion to Dismiss on November 13, 2006. The grounds raised in the renewed motion are identical to those initially alleged by FSA. The motion challenges Debtor's eligibility as a family farmer under the Bankruptcy Code which requires that an individual must receive more than 50% of gross income for the tax year preceding the taxable year in which the petition is filed from a farming operation. In its motion, FSA asserts that Debtor received significantly less than 50% of her gross income from farming. FSA asserts that Debtor earned $19,497.69 as wages in 2004 while being employed by Orthopaedic and Reconstructive Surgery, PC as a medical assistant. FSA further alleges that less than $3,000 of Debtor's income was derived from farming operations in calendar year 2004. The farm income numbers are taken from Debtor's Statement of Financial Affairs #2 which states that for fiscal year 2004 Debtor received $2,693.46 from the U.S. Department of Agriculture and sale of cattle.

The Bankruptcy Code provides that "Only a family farmer with regular annual income may be a debtor under chapter 12 of this title."  11 U.S.C. § 109(f) (2005).[1]  The term "family farmer" is a defined term in the Bankruptcy Code.  Certain limitations are placed upon a debtor who wishes to qualify for filing a Chapter 12 case as a family farmer.  Among those limitations is the requirement that the debtor "receive from such farming operation more than 50 percent of such individual's or such individual and spouse's gross income for the taxable year preceding the taxable year in which the case concerning such individual or such individual and spouse was filed."  11 U.S.C. § 101(18)(A).

Most of the factual and legal contentions of the parties are not in dispute.  It is uncontested that a debtor's qualification under Chapter 12 is determined as of the time of filing the petition.  It is also uncontested that the burden is upon Debtor to establish Debtor's eligibility under this Chapter.  In this case, it is agreed by the parties that Debtor did not have farm income in either calendar years 2003 or 2002.  Therefore, Debtor's eligibility for Chapter 12 rests solely upon an analysis of her income for calendar year 2004.

Debtor filed her Chapter 12 petition on June 21, 2005.  Her Statement of Financial Affairs reflects salary for 2004 of almost $20,000.  At the same time, Debtor's Statement of Financial Affairs reflects farm income for 2004 of less than $3,000.  It is these numbers upon which FSA relies in making its argument.  However, Debtor has submitted her 2004 Federal income tax return.  Debtor's claimed wage income for 2004 is very close to the numbers stated by her in her Statement of Financial Affairs.  However, the Federal tax return paints a substantially more complex picture of her farm income.  The attachment to Debtor's Schedule F establishes sales of soybeans, hay, beef and wheat in the total amount of $25,220.  Her Schedule F also establishes expenses for 2004 of $65,560.  Schedule F of this return reflects a loss of more than $37,000 which is carried over to the income column of her Schedule 1040.  In summary, Debtor claimed a total loss for 2004 of $21,573 from her farming operations.

The term "gross income" is not a defined term in the Bankruptcy Code.  Much of the case law defining and applying the term gross income in a Chapter 12 context arose during the family farm crisis of the 1980's.  In re Rott, 73 B.R. 366 (Bankr.

---

[1] Because this case was filed prior to October 17, 2005, the Court applies the version of the Bankruptcy Code in effect prior to the effective date of the Bankruptcy Reform Act of 2005.

2

D.N.D. 1987); In re Faber, 78 B.R. 934 (Bankr. S.D. Iowa 1987); and In re Vernon, 101 B.R. 87 (Bankr. E.D. Mo. 1989). Much of the case law defining gross income looked to the Internal Revenue Code for guidance. A body of case law exists which holds that gross income would be conclusively defined using the Internal Revenue Code standards. See Rott, 73 B.R. at 371-72 (concluding "gross income" is not an accounting term capable of precise definition.) However, many cases apply a more flexible approach and only presumptively apply Internal Revenue Service definitions. This latter group of courts apply the Internal Revenue Service definitions unless an absurd or irreconcilable results would follow. Faber, 78 B.R. at 935; Vernon, 101 B.R. at 90-91. The term "gross income" was intended by Congress to include all gross receipts generated from the farm business without deduction of the costs or other expenses associated with the farming operation. Faber, 78 B.R. at 935 (stating "costs of operations" are not deductible from gross receipts in computing gross income).

In this case, FSA presents numbers which were used by Debtor in her Statement of Financial Affairs. If those numbers were correct, FSA would have a legitimate argument that Debtor does not meet the qualifications of Chapter 12. However, Schedule F of Debtor's 2004 tax return establishes she had gross income from farming of $27,913. Her non-farm income is $20,124. Applying the appropriate criteria to this case, Debtor has established that she has received at least 50% of her gross income from her farming operation during taxable year 2004, which was the taxable year immediately preceding the taxable year in which the petition was filed. This record is devoid of any evidence which would establish that the IRS criteria should not be applied. No absurd result is apparent from the evidentiary record. As such, Debtor has established that she qualifies for protection under Chapter 12 of the Code. FSA's Motion to Dismiss must be denied.

**WHEREFORE**, for the reasons set forth herein, the Renewed Motion to Dismiss filed by FSA is DENIED.

Dated and Entered: DECEMBER 20, 2006

_____
Paul J. Kilburg
Bankruptcy Judge