```
              UNITED STATES BANKRUPTCY COURT
              FOR THE NORTHERN DISTRICT OF IOWA
```

IN RE:                          )
                                )    Chapter 13
MARY VANTIGER-WITTE,            )
                                )    Bankruptcy No. 05-02931
    Debtor.                     )

### ORDER RE: CONFIRMATION OF PLAN

This matter came before the undersigned on May 7, 2008 for hearing on confirmation of Debtor's Chapter 13 plan.  Debtor Mary Vantiger-Witte appeared with attorney Thomas McCuskey.  The United States on behalf of the Farm Service Agency (FSA) was represented by attorney Martin McLaughlin.  Carol Dunbar appeared as Chapter 13 Trustee.  After the presentation of evidence and argument, the Court took the matter under advisement.  The time for filing briefs has now passed and this matter is ready for resolution.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(L).

### STATEMENT OF THE CASE

FSA objects to confirmation of Debtor's Chapter 13 plan.  It argues the plan and this case were not filed in good faith.  FSA asserts Debtor has failed to account for cattle and other property which were collateral for its loans.  Debtor asserts she filed her bankruptcy case and Chapter 13 plan in good faith.

### FINDINGS OF FACT

Debtor filed a Chapter 12 petition on June 21, 2005.  No plan was ever confirmed, primarily because of issues involving the rights of secured creditors.  After requiring Debtor to file an adversary proceeding to determine the secured status of Creditor MERS and FSA, this Court ruled on September 14, 2006 that MERS had a first mortgage of $66,965.92 on Debtor's real estate with priority over FSA's mortgage.  FSA appealed this ruling.  The appeal was dismissed on motion of FSA on April 3, 2007.  The dismissal was filed in this Court on July 26, 2007.

In the meantime, the Court ruled on FSA's Motion to Dismiss.  FSA argued that Debtor was not eligible for Chapter 12 based on amounts listed in Debtor's Statement of Financial Affairs.  The Court held that Chapter 12 eligibility is determined by gross income from farming as shown in Debtor's 2004 income tax return.  The Court found Debtor was eligible for Chapter 12 and denied FSA's Motion to Dismiss.

Debtor filed a Motion to Convert to Chapter 13 on September 7, 2007.  Amended Schedules show Debtor's sole income

is currently from her employment as a medical assistant. She no longer owns any real estate. She lists FSA as an unsecured creditor, explaining that no collateral exists anymore. The total of the three FSA loans on Schedule F is $167,820.79. Total unsecured debt is $179,340.52.

Debtor's modified plan filed January 24, 2008 proposes to pay $315.00 monthly. Debtor orally modified the plan to extend it for a total of 40 months, with $245.58 already paid to Trustee and 38 payments remaining due in the amount of $315.00. Thus, Debtor will pay a total of $12,215.58 through the Plan. After deducting Trustee's fees of 10% of the total Plan funds, and attorney fees of $1,700, unsecured creditors will receive approximately 5.2% of their claims. This is slightly more than unsecured creditors would receive in a hypothetical Chapter 7 case.

In contrast to statements made at the hearing, Debtor's Reply Brief filed September 2, 2008 at pp. 5-6 state Debtor proposes a plan that is for 60 months. At the hearing, counsel for Debtor and Trustee both indicated the plan was for 40 months. If the plan length is 60 months, unsecured creditors will receive approximately 8.3% of their claims.

At the hearing, the parties presented testimony by Debtor and by Dawn Stewart, a farm loan officer with the Henry County FSA office. Ms. Stewart was the loan officer who worked with Debtor during her application process in 2004. Although Debtor's farm loan applications were initially denied, Debtor successfully appealed the denial and closed on three FSA loans on September 20, 2004. One loan was an annual operating loan, another was for machinery and the third was a cow loan for actual breeding stock.

The total amount of the loans was originally $170,000. FSA's claim filed 12/21/05 asserts a secured claim of $167,367 and lists the value of collateral at $237,967. FSA had liens on all cattle, crops, equipment and machinery. Debtor granted the FSA a lien on her home as well, but the Court determined FSA's lien was subordinate to a first mortgage held by MERS.

Debtor had worked with Steve Heitshusen in his farm operation near Wayland, Iowa beginning when she met him in 1999. They became engaged in May 2004 but called off the engagement in November 2004. Thus, at the time Debtor received the FSA loan for her farming business, she believed she would marry Mr. Heitshusen, move to the farm with him and raise cattle with the funds borrowed from FSA. Soon thereafter, however, Debtor's engagement ended. On October 13, 2004, Debtor met with Ms. Steward stating she was upset by Mr. Heitshusen's anger and temper and had lost trust in him. Ms. Stewart was aware that Mr. Heitshusen might have sold some of Debtor's hay without her

permission and had placed the name of Heitshusen Cattle Co. on the side of Debtor's truck purchased with FSA funds.

    At the October 13, 2004 meeting, Ms. Stewart suggested Debtor immediately liquidate assets. Debtor decided, instead, to talk to her attorney. FSA's exhibit 1 is a copy of a letter from Debtor's attorney, Patrick Brau, to Mr. Heitshusen dated October 13, 2004. It informs him not to transact any business on behalf of Debtor and requests an accounting of any transactions already made. Ms. Stewart testified, however, that when she talked to Debtor the next day, Debtor had changed her mind and was hopeful issues would work themselves out. During a farm visit later in October, Ms. Stewart found that some of Debtor's hay was missing. Later in the year, she found 15 of the cattle were missing. Eventually, Debtor's actual expenses ended up being higher than projected expenses and Ms. Stewart became concerned about Debtor making loan payments due in March. She testified that Debtor did not seem concerned with making the March payment or the more than $30,000 she was short. Debtor wanted to use any available money for 2005 operations, rather than making payments on her loans.

    Debtor testified that by the time she filed her bankruptcy petition in June 2005, she wanted to get away from both Mr. Heitshusen and Ms. Stewart. They were saying opposite things and Debtor couldn't handle the stress. She was "ready to give it up." After the bankruptcy, Debtor continued to go to the farm every weekend for one or two days as she had before. She never lived at the farm but went there when she could and helped with the operations and decision making. Debtor moved from Mt. Pleasant to Coralville, Iowa, approximately 30 miles farther away from the farm in Wayland, in November 2005, about five months after she filed her Chapter 12 petition.

    Debtor was never able to sell a calf crop. Some cattle were sold with the funds going to help operations. In the end, everything was liquidated with the money applied to the FSA loans.

    Ms. Stewart testified that Debtor failed to account for at least 55 cattle. The 2005 soybean crop was sold, but was not in Debtor's name, and FSA did not receive proceeds from the sale. FSA also did not receive funds from all the sales of cattle.

## CONCLUSIONS OF LAW

    Because this case was filed prior to October 17, 2005, the Court will apply the Bankruptcy Code in effect prior to the effective date of the Bankruptcy Abuse and Consumer Protection

Act of 2005.[1]  The FSA asserts its arguments under both sections of Chapter 13 in which the issue of good faith arises.  "First, 11 U.S.C. § 1307(c) provides that the court may dismiss a case or convert it for cause, and numerous courts have held that filing a Chapter 13 petition in bad faith is cause for conversion or dismissal under § 1307(c)."  In re Lancaster, 280 B.R. 468, 474 (Bankr. W.D. Mo. 2002); In re Molitor, 76 F.3d 218, 220 (8th Cir. 1996) (stating cause under § 1307(c) includes filing a bankruptcy petition in bad faith).  Additionally, § 1325(a)(3) provides that, in order to be confirmed, a Chapter 13 plan must be "proposed in good faith and not by any means forbidden by law." 11 U.S.C. § 1325(a)(3).

> In the Eighth Circuit, "good faith" analysis under § 1325(a)(3) is focused on "whether the plan constitutes an abuse of the provisions, purpose or spirit of Chapter 13."  This requires looking to the totality of the circumstances to discern whether good faith exists.  In In re Estus, the Eighth Circuit enumerated several factors to be considered.  Following the enactment of § 1325(b), the Eighth Circuit concluded that that provision subsumed many of these factors, and so it narrowed the focus to one which depends on "whether the debtor has stated his debts and expenses accurately; whether he has made any fraudulent representation to mislead the bankruptcy court; or whether he has unfairly manipulated the Bankruptcy Code."  However, the Eighth Circuit preserved parts of the Estus "totality of circumstances" approach and, thus, factors such as the type of debt sought to be discharged and whether the debt is nondischargeable in Chapter 7, and the debtor's motivation and sincerity in seeking Chapter 13 relief, are particularly relevant.

In re Schachtele, 343 B.R. 661, 668 (B.A.P. 8th Cir. 2006) (footnotes omitted) (citing In re LeMaire, 898 F.2d 1346, 1348 (8th Cir. 1990); In re Estus, 695 F.2d 311, 316 (8th Cir. 1982); and Educ. Assistance Corp. v. Zellner, 827 F.2d 1222 (8th Cir. 1987)).  These factors are also applied to a good faith determination under § 1307(c).  Molitor, 76 F.3d at 220-21 (applying factors from LeMaire to § 1307(c) motion to convert for cause).

Generally, the debtor has the ultimate burden to prove a Chapter 13 plan meets all the requirements for confirmation, including that it was filed in good faith under § 1325(a)(3).

---

[1]BAPCPA added a requirement for confirmation of Chapter 13 plans in 11 U.S.C. § 1325(a)(7) which states the court shall confirm a plan if "the action of the debtor in filing the petition was in good faith."

Lancaster, 280 B.R. at 474. Under § 1307(a)(3), the objecting creditor bears the burden of proof. Id.[2]

The FSA asserts that Debtor improperly failed to account for all its collateral or to turn over proceeds of sales of collateral. This is similar to a claim of willful and malicious injury under § 523(a)(6), which would make the debt nondischargeable in a Chapter 7 or Chapter 12 proceeding, but included within the Chapter 13 superdischarge. See 11 U.S.C. § 1328(a)(2) (excepting from the Chapter 13 discharge debts of the kind in § 523(a)(5), (8) and (9)); 11 U.S.C. § 1228(c)(2) (excepting from discharge debts of the kind in § 523(a), i.e. the same as those nondischargeable in Chapter 7)). This is a factor that may be weighted in determining if a debtor acted in good faith. In re Tobiason, 185 B.R. 59, 64 (Bankr. D. Neb. 1995).

In LeMaire, the Eighth Circuit found a lack of good faith under § 1325(a)(3) and noted there is a strong public policy prohibiting discharge of a debt from willful and malicious injury following an attempted murder. 898 F.2d at 1353. In Lancaster, the court noted that there was little doubt that the debtor's actions in causing an explosion which destroyed the creditor's house were willful and malicious under § 523(a)(6). 280 B.R. at 476. It found, however, that those actions were not so egregious that, standing alone, they would foreclose the debtor from seeking Chapter 13 relief. Id. at 477. The court in Tobiason found that an alleged breach of securities laws, even if the resulting debt was established to be nondischargeable, does not lead to an automatic finding of bad faith. 185 B.R. at 65.

This Court has stated:

> The key inquiry, however, is whether the plan represents an attempt to "unfairly manipulate the Bankruptcy Code," which the Eighth Circuit has termed "central to the court's task of determining whether the plan constitutes an abuse of the provisions, purpose or spirit of Chapter 13."

In re Gillespie, 266 B.R. 721, 726 (Bankr. N.D. Iowa 2001) (Edmonds, J.) (citing LeMaire, 898 F.2d at 1351) (concluding Chapter 13 debtor did not lack good faith under totality of the circumstances where the majority of claims arose from personal injuries in a bar fight). In In re Davis, 239 B.R. 573, 578 (B.A.P. 10th Cir. 1999), a Chapter 13 debtor had sold inventory out of trust and failed to account for proceeds. The Chapter 13 plan proposed a payback to his only creditor of 0.4% of its then

---

[2]This dichotomy has arguably changed with BAPCPA's enactment of § 1325(a)(7), making the good faith filing of the petition a requirement for Chapter 13 confirmation.

5

unsecured claim.  Id.  The court stated:  "Rather than a good faith effort to repay this debt, we see a manipulation of the system by a debtor who defaulted on obligations grounded in dishonesty, and who subsequently sought to avoid these nondischargeable debts at minimal cost."  Similarly, in In re Banks, 248 B.R. 799, 805 (B.A.P. 8th Cir. 2000), aff'd 267 F.3d 875 (8th Cir. 2001) (per curiam), the court found the debtor's stated intention to avoid payment of a claim to pension payments by his ex-wife and the meager repayment percentage proposed in the plan was the "antithesis of good faith" in the context of Chapter 13.  See also In re Soost, 290 B.R. 116, 122 (Bankr. D. Minn. 2003) (finding of bad faith may be warranted where a judgment creditor's claim is the only significant debt to be provided for under Chapter 13 plan).

## ANALYSIS

Applying the Eighth Circuit factors in the totality of the circumstances, the Court finds Debtor has accurately stated her assets, debts and expenses.  The record does not support a finding that Debtor has made any fraudulent representation to mislead the Court.  It is notable, however, that FSA's $168,000 claim constitutes approximately 94% of total unsecured claims in this case, making it the only significant debt to be dealt with under a plan which pays approximately 5.2% of claims.

FSA asserts Debtor has wrongfully converted collateral, which, if proven, could give rise to a claim of nondischargeability under § 523(a)(6).  Based on the record presented, however, the Court cannot conclude that FSA's claim would be excepted from discharge if this was a Chapter 7 or Chapter 12 case.  The record lacks specific facts regarding the extent or value of missing collateral and the willfulness or maliciousness of Debtor's conduct.  FSA has established, however, that collateral is missing or has been sold without the proceeds going to FSA.  Debtor neither denies this nor offers an explanation for this breach of the parties' security agreements.

Debtor points out that she originally believed FSA had a first lien on her home and its claim could be substantially satisfied by that collateral.  She argues this supports a finding of good faith, in that she intended that FSA would be paid in full and was not attempting to avoid payment.  Debtor knew, however, that the value of her home was insufficient to satisfy the two mortgages attached to it and that a first mortgage was in place when she granted FSA the lien.  Thus, she knew one of these mortgage creditors was going to end up undersecured, regardless of whether she eventually avoided making full payment to FSA or to the other mortgagee.

Based on the testimony presented, Debtor was ambivalent about her farm operations at the time she filed her Chapter 12

petition and during the pendency of the Chapter 12 case. Initially, she was just ready to get out of the business because of the stress. But, she continued to be involved with the farm. Testimony was given regarding Debtor's monthly Chapter 12 reports, but they are not included in the record. The Court has no information available to determine the amount of farming activity Debtor was engaged in during the Chapter 12 case.

Within a few months of filing the petition, Debtor moved 30 miles farther away from the farm. Sometime later, she liquidated the all farm operations and eventually relied solely on her off-farm income. Although FSA believed it had significant collateral when it filed its claim, it has now all been liquidated or is missing and approximately $168,000 of unsecured debt remains. These circumstances are relevant to consideration of whether Debtor has unfairly manipulated the Bankruptcy Code and her motivation and sincerity. They make it difficult for the Court to find that Debtor filed her Chapter 12 case with the good faith intent to reorganize her farm operations and pay her creditors.

FSA's brief focuses on the fact that Debtor did not file a confirmable plan while her Chapter 12 case was pending for more than two years. It also points out that Debtor used its cash collateral during that time without its's consent or the Court's approval. Collateral cattle and the 2005 soybean crop disappeared during this time as well, without any clear explanation by Debtor. FSA asserts these three misdeeds on Debtor's part before she converted her case to Chapter 13 show her lack of good faith. The Court also finds relevant the facts that FSA's claims constitute 93% of total unsecured claims and that Debtor's proposed 40-month plan pays only 5.2% of total unsecured claims, or 8.3% if extended to 60 months.

The totality of the circumstances in this case do not reach of egregiousness of those in <u>LeMaire</u> (attempted murder) or <u>Davis</u> (selling inventory out of trust and less than 1% payout to creditors). The Court, however, is not convinced that Debtor filed her case, converted to Chapter 13 and filed her Chapter 13 plan in good faith. Debtor's inability to explain the depletion of FSA's collateral during the pendency of the Chapter 12 case is troublesome. This undermines the purpose of Chapter 12 to give farmers a chance at a fresh start while protecting creditors from further losses. The Court is convinced that Debtor has unfairly manipulated the Bankruptcy Code. Her motivation in this case has clearly been to rid herself of her farming operation by paying the least amount to her creditors. Based on the totality of the circumstances, the Court concludes that Debtor's plan violates § 1325(a)(3). Furthermore, this case should be dismissed pursuant to § 1307(c).

**WHEREFORE**, confirmation of Debtor's Chapter 13 Plan is DENIED.

**FURTHER**, this case is DISMISSED.

DATED AND ENTERED: September 29, 2008

_____
PAUL J. KILBURG
CHIEF BANKRUPTCY JUDGE